Everyone's present, Justice Smith. All right, I guess we're ready to go. This is the case of Benjamin Levin and Daryl Norton et al. v. City of Chicago, 123-1245. Our rules are as follows. The appellant goes first, gets 15 or thereabout minutes. We do not normally interrupt unless you get way off track, and then we start quizzing you. And the alternative, then the appellee gets, we ask questions then, and then after that, the appellee gets his chance, and then we ask questions, and then there's the closing. You have before you Justice Aurelia Puchinski, Justice Terry Levin, and Justice James Fitzgerald Smith. With that, the appellant may proceed. Yes, good afternoon. So, my name is Mark Roth. I represent plaintiff's appellants. I believe our positions are relatively straightforward and set forth in the briefs, but I did want to highlight a few things for the justices. First of all, we're here because the Circuit Court of Cook County entered summary judgment and dismissed our complaint. So the standard of review that we're here on is a de novo standard. This case involves one location in the city of Chicago where the city operates speed cameras. It's in the Wrigleyville area. One speed camera is located on Irving Park Road, and two speed cameras are located on Broadway Avenue. And the city ties these speed cameras to Challenger Park that's located in the city. Now, you have what's called the Speed Camera Act, and that says that the city of Chicago may operate a speed camera within one-eighth of a mile of any land, area, or facilities owned by a park district. So, the trial court in this case entered summary judgment on two bases. First of all, the trial court ruled that the Chicago Park District owns Challenger Park and Kelly Park, which is a neighboring park, because the park district operated a park on that land. Secondly, the trial court found that the city of Chicago should be considered a park district under the Speed Camera Act, and we contend that the trial court erred on both of those rulings. So, just to give you very briefly some background, the city of Chicago owns title to Challenger and Kelly Parks. That's undisputed. The city had entered into a lease with the Chicago Park District in 1991, and that lease agreement provides that the city of Chicago and the Chicago Cubs were going to pay for certain improvements in Challenger Park. And the Cubs were building and paid for a parking lot for night games when the Cubs played at Wrigley Field. So, the Cubs installed the parking lot, they installed the lights, the park district didn't pay for any improvements, and the city's own witnesses that were deposed in this case testified that all of the improvements in the park were owned by the city and not the park district pursuant to this 1991 lease agreement. So, the 1991 lease agreement expires at the end of 2015, and pursuant to the terms of that 1991 lease agreement, the agreement could not be extended unless there was a subsequent written agreement in place. And that's because the 1991 agreement was something that was passed by an ordinance by the city council, and it was actually signed by the mayor of the city at that time. So, there's no agreement in place between the end of 2015 until after this lawsuit was filed. In early 2018, the city and the park district enter into a new agreement that they term an intergovernmental agreement. And that new agreement only grants the park district the right to use but not possess the parks. What that grants is a mere license and grants no possessory interest in the parks in the Chicago Park District. That same intergovernmental agreement transferred improvements in the park from the city of Chicago to the Chicago Park District. So, the city owned all of the improvements before this 2018 intergovernmental agreement. The evidence before the trial court established that the city's own witnesses admitted that the city owns the parks, not the park district. The 2018 intergovernmental agreement expressly states that the parks are on property owned by the city, not the park district. So, under both the 1991 agreement and the 2018 agreement, the park district has no incidence of ownership in the parks whatsoever. It can't sell the land. It can't buy the land. It can't lease the land. But the trial court ruled that because the park district operated a park on the land, then it, quote, owns the land, area, and facilities. And so, the trial court actually ignored case law that we've cited. It's the Wheaton College case that's cited in our briefs, city of Chicago versus internal revenue, in which to look at ownership, and I understand that naked title is not conclusive of ownership. But if you look at an agreement, and the Illinois Supreme Court has interpreted agreements in which they found that you have to look at who is benefiting from the agreement to determine ownership. And in this case, it's unquestionably the city. The city is getting a park. The city's residents are benefiting from the agreement. And also, what's really important to know is that we filed a jury demand in this case, because we're asking for declaratory relief and other relief. But our jury demand would allow the jury to consider contested facts. So, we were before the trial court on a summary judgment motion. So, the question on a summary judgment is, are there material questions of fact? That's the question that the trial court needs to answer. And there were and are numerous, numerous material questions of fact. Give me the top three. Sure. Three issues of material fact. Well, one issue is, so first of all, whether ownership is a bundle of rights. So, you have to look at what consists of that bundle. One thing is title. Certainly, you can't ignore the fact that the city of Chicago owns the parks. So, there's a question of fact there in that whole bundle of rights that you're looking at. Who has ownership to the title? So, that's a question of fact that should have precluded summary judgment. It's not outcome dispositive necessarily, but it's an issue that the jury should be allowed to consider. Another material question of fact. Can the park district own the property when it has no incidence of ownership? It's unquestionably a lessee under the 91 agreement. It's a licensee under the 2018 agreement. And it has no incidence of ownership whatsoever, which is a factor that the courts look at in determining ownership. It can't sell the land. It can't buy the land. It can't lease the land. It has no possessory interest in the land whatsoever. It's a mere tenant and a mere licensee. Also, there's admissions in this case, almost too numerous to list, in which the city of Chicago says, we own these parks. Their own in-house counsel, who was in charge of drafting this intergovernmental agreement, on two separate occasions that are in the record before the trial court, said to the park district, hey, the park district was saying, look, we want to build something in here where you need to give us permission to come into the parks. And the city's attorney, who's in charge of this, this is the principal attorney who's in charge of putting this agreement together, says, why would we do that? We don't need your permission to come on our land. Those are our parks. We don't need your permission. And it goes on and on. The 2018 intergovernmental agreement literally says that the city owns the parks, not the park district. I know you asked for three. I think I gave you about four, but there's more. It goes on and on. I mean, the witnesses admitted that under the 2018 intergovernmental agreement, it only conferred a license. Illinois law is clear that a license doesn't give you any possessory interest in anything. It's just a license to use something. So those are material questions of fact that are existing, and quite frankly, should have precluded the entry of summary judgment, particularly because here we have a jury demand. The trial court judge is not ultimately deciding the material questions of fact. The judge should have only decided whether there are questions of fact. And in that case, we believe that she erred because there are these questions. So I hope I answered your question directly. Do you agree that the definition of... I'm sorry. I'm sorry I interrupted you. Okay. Do you agree that the definition of quote park district found in section 1-156.5 does not apply to the speed camera statute? 1-1.65? 1-156.5. You know, I'm sorry. I don't believe we briefed that issue. I'm not. Is that in the speed camera act or? I believe so. It's a separate section that isn't directly on point. I'm not familiar with that definition, but what I can tell you is that what the trial court did. So I want to back up on the definition of a park district. So, first of all, we have to understand that this speed camera act was enacted only for the city of Chicago. So there's two ways to look at it. First of all, it's unquestioned that the speed camera act applies only in the city of Chicago. Because it has 1 million or more inhabitants. Far and away. In our lifetimes, in our grandchildren's lifetimes, there will not be another municipality in Chicago because of geographical limitations and the like that has a million inhabitants. But nevertheless, nevertheless, the speed camera act was intended to apply to the city of Chicago. And the only park district in the city of Chicago is the Chicago Park District. But let's look at it a different way. Let's look at it a different way. Because the speed camera act specifically says it applies to municipalities with 1 million or more inhabitants. So what does that mean? It means that you can locate a speed camera within 1 8th of a mile of any land area or facilities. Owned by a park district within a municipality that has 1 million or more inhabitants. Well. The only park district in a municipality that has 1 million or more inhabitants is the Chicago Park District. So, the intent of the definition of park district. Is a park district within a municipality has a million or more inhabitants. In this case, it's the Chicago Park District. It's not any park district under the park district code because the only parks in the city of Chicago. Park district in the city of Chicago is the Chicago Park District. But here's really what the trial court did. That, you know, obviously we take issue because we think that the definition is pretty clear based on the circumstances and the clear wording and the speed camera act. That says it only applies to a million or more municipalities with a million or more inhabitants. And that's only the city of Chicago. It has to be the Chicago Park District. But what the report did is it said, well. We're going to take the definition of a park district from section 605.3 of the vehicle code and we're going to. We're going to import that into the speed camera. And so we contend that that's improper for a couple reasons. So, 1st of all. The trial court. You're going to have to shorten up your answer. You're going over the limit. Well, I'm trying to understand. You got to zero in on your key points, not just anything. Well, hopefully I am, but my key point here is. The trial court took section 605.3 and they borrowed a definition from that section and they imported into the speed camera act and that's incorrect. Because the statutory schemes of those 2 different statutes are different. And most importantly, this is a very important point to to understand and consider in your judgment is that. These 2 streets Irving Park Road and Broadway Avenue, where the speed cameras are located. Are not are not park zone streets pursuant to which section 605.3 would apply. So, 605.3 says anywhere in the state municipality can reduce designate there's a street, it has to be adjacent to a park. And you can designate that as a reduced speed limit of 20 miles an hour. If you do so pursuant to an ordinance, and you install signs that say there's a reduced speed limit. Here, the streets that we have are not park zone streets under section 605.3 and they, they never have have been. The city could designate them as such, but they haven't for several reasons. First of all, a park zone street has to be adjacent to a park and Broadway Avenue is not adjacent to a park. Secondly, a park zone street has to be designated by ordinance as being a park zone street in which the speed limit is reduced to 20 miles or less. The city of Chicago never did that and doesn't reduce the speed limit to 20 miles an hour or less. In fact, it's 30 miles an hour in these particular parks, the same as normal speed limit. And furthermore, in order for that section 605.3 to apply, you have to have the municipality has to install signs saying that you're approaching a park district, and we're reducing the speed to 20 miles an hour or whatever lesser amount the municipality decides. So what the trial court did and why we think it erred is that, first of all, you should not be importing any other definitions into another statute unless there's clear ambiguities, which there are not. And that's actually a canon that's used if the statutes are in party material, as the court says, only if there's ambiguities and kind of as a matter of last resort because you can't figure it out. So you look at a different statute. But importantly, the whole concept of 605.3 which the trial court used to import into the Speed Cam React is completely different. It's a completely different statutory scheme. So, the trial court erred in taking section 605.3 and applying the definition to the Speed Cam React, because those set of circumstances just don't even apply. You've already told us that once, sir. Any other questions? I'm good. Aurelia? All right, Stephen, you may proceed. Thank you, and may it please the court. My name is Stephen Collins and I represent the city of Chicago. Summary judgment for the city was proper because the cameras at issue in this case comply with the Speed Camera statute. Today, I'll explain that this is true for three independent reasons. First, the Speed Camera statute authorizes cameras near recreational land that's owned by a park district, and the city of Chicago, which holds title to the land at issue here, qualifies as a park district under the statute. Second, the statute also authorizes cameras near recreational facilities and areas that a park district owns, and the Chicago Park District owns the recreational facilities and areas here. And third, for purposes of the Speed Camera statute, the Chicago Park District may be deemed an owner of the land as well. But I'd like to start with the city's status as a park district under the Speed Camera statute. Now, the statute does not expressly define the term park district. And the vehicle code has a general definition of that term, and Justice Lavin, I think this is the provision you were alluding to. It has a general definition of the term as it appears throughout the vehicle code. But we know that that definition can't apply to the Speed Camera statute because it excludes the Chicago Park District. And at a minimum, the Speed Camera statute's reference to park district must include the Chicago Park District because the city of Chicago is the only municipality in the state to which the Speed Camera statute applies. So, in these circumstances, it's appropriate to look to another provision of the vehicle code for a definition of the term park district. That provision is Section 605.3, which we refer to in our brief as the Park Traffic Statute. Among other things, the Park Traffic Statute provides for reduced speed limits near public parks. So, like the Speed Camera statute, the Park Traffic Statute aims to protect children and other pedestrians from motor vehicles near parks. Given that the two statutes share a common purpose, it makes perfect sense to rely on the Park Traffic Statute's definition of park district to understand what that same term means in the Speed Camera statute. And the city satisfies that definition. So, because the city holds title to the land, and the city qualifies as a park district, the land is owned by a park district, and the cameras at issue in this case comply with the Speed Camera statute. Now, plaintiffs, for their part, failed to offer a coherent alternative to our interpretation of the term park district. In their opening brief, they asserted that park district means park district. But, of course, that's no definition at all because it merely repeats the very term that needs to be defined. In their reply brief, plaintiffs shifted gears somewhat and argued that the term park district means only the Chicago Park District. But if the General Assembly intended to refer only to the Chicago Park District, it would have said so expressly. Instead, the General Assembly chose broader language, namely a park district, and the city of Chicago comes within that term. Now, I'd like to address a second reason why summary judgment was proper, and that is that the Chicago Park District owns the recreational facilities and areas at Challenger Park and Kelly Park. At all times relevant to this suit, the Chicago Park District has owned these facilities and areas by exercising control over them. Among other things, the Chicago Park District is responsible for the maintenance of these facilities and areas at Challenger Park and Kelly Park. The parks themselves appear on the Chicago Park District's website, and Chicago Park District signage greets visitors at the entrances to both parks. Moreover, representatives from both the city of Chicago and the Chicago Park District testified that the Chicago Park District has owned these recreational facilities and areas. Additionally, the 1991 and 2018 agreements provide for Chicago Park District ownership of these recreational improvements at these parks. So, for all these reasons, the Chicago Park District owns these recreational facilities and areas, and the cameras near those facilities and areas comply with the statute. Let me ask a question. Are you arguing that the Chicago Park District, quote, owned, close quote, the entire surface area within the boundaries of Challenger and Kelly? Your Honor, I want to adhere to the language of the speed camera statute, which is in terms of facilities and areas. So, it's our position that the Chicago Park District owns those facilities and areas. To be sure, those facilities and areas sort of reside on the surface of the park. But that is how we frame our ownership argument is in terms of the facilities and areas, such as the recreational fields, the dog friendly area, spaces like that. And on this point, I want to emphasize as well that when it comes to ownership of these recreational facilities and areas, there's never been any dispute between the city of Chicago and the Chicago Park District. Both entities agree that the Chicago Park District has owned these facilities and areas. Plaintiffs, who are complete outsiders to the longstanding arrangement between the city of Chicago and the Chicago Park District at Challenger Park and Kelly Park, are the only ones asserting that the city has somehow owned these facilities and areas. But plaintiff's position is contrary to the understanding of the city and the park district themselves and the contracts between the parties. And this court should reject plaintiff's position. Finally, summary judgment for the city was proper for a 3rd reason, which is that given the Chicago Park District's longstanding control of the facilities and areas at these parks, the Chicago Park District should be deemed an owner of the land at these parks as well. Now, to be sure, the city of Chicago holds title to this land, but the formalities of title have nothing to do with the General Assembly's purpose in enacting the speed camera statute. That purpose is to protect children from motor vehicles near public parks. Challenger Park and Kelly Park are doubtlessly public parks, and the children who use them are in need of protection from speeding vehicles, regardless of whether the city of Chicago or the Chicago Park District holds title to the land. Accordingly, the Chicago Park District may be deemed an owner of the land for purposes of the speed camera statute, and summary judgment was proper for this reason as well. So, for all these reasons, we ask that the circuit court's judgment be affirmed. And with that, I welcome the court's questions. Questions. I have a question. You've said that you believe the 1st reason summary judgment was proper is because the city of Chicago is a park district. And as I understand it, the city of Chicago. I didn't do a deep dive into anything, but just the city of Chicago's website says the manages. 570 parks, and there are 614 parks in Chicago. I would have expected more information about the parks that the Chicago Park District does not own. Does the city own all the land under all of those parks in the city of Chicago? Does the city of Chicago own? Has it deeded over to anybody? Any of the land under any of those parks? I was just surprised that there wasn't more information in these in the briefs or in the record. At least I couldn't find it. I looked through all volumes of the common law record. I could not find a list of parks, any place that said who actually owns these parks. So you're telling me that you believe that because the Chicago Park District has managed and operated and built facilities on Challenger and Kelly that we should consider them owners, even though there's no legal document that says that the city has never deeded the property over to the park district. But even without that, the city of Chicago is a park district in general because it has a bunch of parks, and then we have no information about what parks it has. So I was just, I'm just sort of complaining because I don't think there's enough information here. I think it might go to your argument why there's a question of fact that needs to be explored in the trial court, but I was shocked not to find more information about how you think the city of Chicago is a park district. Well, Your Honor, our position is that there are no issues of material fact here, and on the question of whether the city qualifies as a park district, I want to be clear that our argument here is narrow. We're not asserting that the city of Chicago is a park district for all purposes and in all cases. Our argument, rather, is that for purposes of the speed camera statute, and as that specific statute uses the particular term park district, in this context, yes, the city of Chicago qualifies as a park district. And in this regard, the statutory provisions, section 605.3 that we're relying on, is not unique in that it defines park district to include entities that are not statutorily formed park districts, such as the Chicago Park District. We cite other examples on pages 27 and 28 of our brief of other statutes that define park district in a similar way in that those definitions include other kinds of entities. And so it really depends on the particular statutory context that the case deals with, and our position is that in this particular context, the best definition of the term park district is another provision of the vehicle code that addresses a very similar problem, namely speeding vehicles near parks. That statute has a clear definition that the city satisfies and that definition should apply to the speed camera statute as well. So, as regards to speed camera statute, you're saying the city of Chicago is a municipality that is a park district by definition? Yes. But the only examples that you've given us of that are Millennium Park and Grant Park. So, I'm just, I was just curious, like, what about all those little plot lots? What about all those little corner parks? What about all that stuff? I mean, does the city of Chicago own more than Millennium Park and Grant Park? And now, on top of that, you're saying, oh, the city of Chicago doesn't even own Challenger Park and Kelly Park. The Chicago Park District does, even though there's no legal document that says that. I'm just trying to figure out how you connect all these dots. Well, your honor, I want to be clear about on the question of ownership of the land. The city of Chicago clearly is an owner of the land in the specific sense that the city holds title to the land. But it's our position. And you have in the city of Chicago maintains Millennium Park and Grant Park, which are clearly there for recreational purposes. So, those 2 parks established that the city of Chicago, according to your brief, as I take it, that establishes that the municipality is a park district under the terms of the speed camera law. Is that how I'm reading this right?  And just based on those 2, so you don't need any other examples. You don't need any corner parks or plot lots or whatever. You just, you have the 2 big ones and you're done with it. That's right. That interpretation is consistent with the plain language of this definition provision itself, because it doesn't require that the recreation facilities be at any particular location, or that the city possess a certain number of them to qualify as a park district. The city, by virtue of having Millennium Park and the Riverwalk qualifies as a park district under that definition. Any other questions? I do. Yes. Thank you. Well, let's move it along. I will, Justice Smith. Thank you. Mr. Collins, what about the signs? I've driven on Irving Park, I've driven on Broadway, thousands of people do every day. Mr. Roth says there are no signs warning or alerting drivers to the victim. Oh, this is the school, the park district, so park ahead, slow down, speed limit 20, no signs. What do you say about that? Well, Your Honor, to be sure, the city has not actually reduced the speed limits on these streets. It's not our position that just because there are cameras at a given location, that there must also be reduced speed limits at that location. And indeed, the controlling statute... Excuse me, I just want to ask, are there signs saying speed cameras around? Watch out for speed cameras? I don't know for certain, Your Honor. Certainly, the plaintiffs have not raised that as an issue in this case, as a grounds for challenging these particular cameras. But I can't cite a part of the record that addresses that specifically. But with respect to these two safety measures, the cameras and the reduced speed limits, the General Assembly has provided both of these tools to policymakers when it comes to decisions about how best to protect children and other pedestrians at public parks. So it's your position that under the Speed Camera Act, even though it says you have to have signs, the signs are optional? No, Your Honor. Because you didn't reduce the speed, you just put up the cameras? And yes, Your Honor, there's no allegation in this case that the city has failed to follow a sign requirement with respect to the speed cameras. I want to be clear about that. And since the speed limits have not, in fact, been reduced, of course, there's no need for such signs addressing the reduced speed limit. Okay, so the speed cameras, the speed limits on these streets is 30 miles an hour. Correct. I read in one of these briefs that the tickets were for not more than 20 miles an hour, more than 30 miles an hour. Is that correct? Your Honor, all of the plaintiffs were exceeding that 30 mile an hour speed limit. I believe the fastest driver was going 20 miles an hour over the speed limit. Going 50? Right. Yes, yes. Okay. All right. Thank you. Now I am done, Justice Smith. Any other questions? None for me. Okay, Mark, you can go after the long presentation. Okay, I'll keep it very short. I know you have a 145. But in order to answer your question. No, take your time. Everybody else seems to. Okay, all right. But in all other instances in which a speed camera is located in the city of Chicago, the Chicago Park District owns title to the park. And I can tell you that because we researched all of the speed cameras in the city of Chicago. And this is the only instance in which the city of Chicago owns the park. In all other instances where speed cameras are located, the parks are owned by title is in the name of the Chicago Park District. And so the thing that's important to understand is that although the trial court took section 605.3 and kind of took a square peg and force it into a round hole 605.3 of the vehicle code doesn't apply here because these streets are not park zone streets. The city of Chicago doesn't reduce speed on these streets, because the city never enacted an ordinance declaring the streets park zone streets. There's no signs that say the speed limit is reduced to 20 miles an hour less because the city doesn't reduce speed, the speed to 20 miles an hour less the speed on the streets is the same exact default speed on every other street in the city of Chicago, which is 30 miles an hour. So taking 605.3 and trying to shoehorn a definition into the Speed Camera Act doesn't work because the statutes are have different purposes and different requirements and different applications. And so again, the definition is a park district is a park district in a municipality that has over a million inhabitants and that's only the Chicago Park District. And the Speed Camera Act even talks about a municipality versus a park district. So there's a differentiation in the Speed Camera Act itself, with respect to park districts and municipalities and there's numerous questions of factor although council says well the park district and the city they treated it as the park district own owning the land well that the land the area facilities let's that's not true because they're governed by a contractual relationship that the city and the park district agreed to in 1991 and it's clear under that agreement that that the park district didn't own any of the land area facilities it's owned by the city. And then now, after the 2018 agreement that's cleared up a little bit because now the the city transfers ownership of the improvements to the park district but but prior to 2018 there's no question, or at least there's at a very minimum material questions as to who those improvements, but you have the city's own witnesses who are agents for the city and these are not some people who are on the periphery of this issue these this is the city of Chicago's own lawyer who's in charge of these parks, saying, we own the parks we the city own the parks. So there's material questions of fact that precluded summary judgment. So we would ask that that this court reverse the trial court and remanded back down. Any further questions. No, no. All right, thank you. This is, I call a muddled section of the law, it's like the legislature and the cities didn't get together when they wrote this. So you got three different things all intertied, which don't tie it down so sounds like somebody should go back to the legislature and start But I thank you both you both laid your arguments out very well. Thank you. Thank you.